**U.S. BANKRUPTCY COURT**
District of South Carolina

Case Number: **19-06512-jw**
Adversary Proceeding Number: **20-80027-jw**

# ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

The relief set forth on the following pages, for a total of 16 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/27/2020**



*signature*

US Bankruptcy Judge
District of South Carolina

Entered: 07/27/2020

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Brian James Macdonald,<br><br>                                    Debtor.<br><br>Michael Furlow<br>Cathy Furlow,<br><br>                                    Plaintiffs,<br><br>v.<br><br>Brian J. Macdonald,<br><br>                                    Defendant. | C/A No. 19-06512-JW<br><br>Adv. Pro. No. 20-80027-JW<br><br>Chapter 13<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

This matter comes before the Court upon the Motion for Summary Judgment filed by Brian J. Macdonald ("Defendant") on June 23, 2020, seeking judgment as to the unjust enrichment cause of action asserted by Michael Furlow and Cathy Furlow ("Plaintiffs"). Plaintiffs filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment on June 25, 2020, alleging that issues of material fact remain as to the unjust enrichment cause of action. A hearing was held on the Motion, and the matter was taken under advisement. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Further, the Court has the authority to make final determinations over this matter as the parties consented to this Court's entry of final orders or judgments on any issue in this adversary proceeding as part of the Consent Scheduling Order entered on May 4, 2020. Pursuant to Fed. R. Bankr. P. 7056, the facts of the case and applicable law, the Court makes the following findings of fact and conclusions of law.[1]

---

[1] To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

## FINDINGS OF FACT[2]

1. On August 26, 2015, in consideration of $1,224,455, a deed was executed conveying the property better known as 5718 Captain Kidd Road in Hollywood, South Carolina ("Subject Property") to Plaintiffs, Defendant, and M. Leigh Macdonald ("Mrs. Macdonald") as tenants in common. Mrs. Macdonald was Defendant's wife as well as Plaintiffs' daughter.[3]

2. The Subject Property was purchased with the intent that the Subject Property would be the primary and personal residence for Mrs. Macdonald and Defendant and their children. As such, Defendant and Mrs. Macdonald resided in the Subject Property as their marital home with their children while Plaintiffs resided at a different property. Defendant and Mrs. Macdonald were to be responsible for all improvements, construction, maintenance and expenses associated with the Subject Property after its purchase.

3. Plaintiffs had previously assisted with the purchase of other real property in Florida and Virginia at which Defendant and Mrs. Macdonald resided. On those occasions, Plaintiffs, Defendant and Mrs. Macdonald had in various ways co-owned the properties, and in at least one prior arrangement, the parties executed a written agreement regarding the real property. However, no written agreement was executed as to the Subject Property.

---

[2] In determining the facts applicable to this Motion, the Court considered the excerpts of the Plaintiffs' depositions submitted in support of the Motion as well as the undisputed statements made by counsel at the hearing on the Motion for Summary Judgment and Motion for Relief from Stay filed in Defendant's main bankruptcy case, the stipulated facts included in the parties pre-trial order (which was submitted by the parties to the Court prior to the hearing on the Motion for Summary Judgment), and Plaintiffs' proofs of claim filed in Defendant's bankruptcy case . The Court also considered and took judicial notice where appropriate of the following other matters which are part of the record in the Partition Action or Defendant's related bankruptcy case: Plaintiffs' complaint and amended complaint, the August 26, 2015 Deed, the two divorce complaints filed by Defendant and Mrs. Macdonald and the temporary consent order entered by the Family Court. *See* Fed. R. Civ. P. 56(c)(3) (2020) ("The court need consider only the cited materials, but it may consider other materials in the record.").

[3] While it appears Defendant and Mrs. Macdonald had separated and commenced divorce proceedings, Mrs. Macdonald passed away in February 2020, prior to the finalization of a divorce order.

2

4. At some point, familial disputes arose between the Plaintiffs, Defendant and Mrs. Macdonald with Mrs. Macdonald primarily telling the Plaintiffs to "stay away from [the Subject Property, the Macdonalds, and their children]."

5. It appears that during times relevant to this proceeding Mrs. Macdonald suffered from substance abuse issues, which resulted in the involvement of the South Carolina Department of Social Services ("Social Services"). In or before February 2018, Social Services required Mrs. Macdonald to no longer reside in the Subject Property if Defendant and Mrs. Macdonald's children were to reside there. After initially leaving the property, it appears that Mrs. Macdonald briefly reconciled with Defendant and returned to the Subject Property. She left the property again upon a reoccurrence of the substance abuse issues and related marital discord between her and Defendant.

6. It appears Mrs. Macdonald separated from Defendant on February 9, 2018. Soon thereafter, on February 16, 2018, Defendant changed the locks to the Subject Property.[4]

7. On February 21, 2018, divorce proceedings were commenced by Mrs. Macdonald. In her complaint, she asserted that the parties separated on February 9, 2018 and that Mrs. Macdonald "is informed and believes that Defendant should continue to reside at the martial home and that Defendant should be responsible for all costs and liability associated therewith, *pendente lite*." A temporary consent order was entered on March 27, 2018 by the Family Court that provided Defendant with custody of the couple's two children and continued occupancy of the Subject Property during the divorce proceedings. Specifically, the March 27, 2018 Consent Order provided that Defendant would have sole and exclusive use and possession of the Subject Property.

---

[4] Plaintiffs proofs of claim filed in Defendant's bankruptcy case indicated that Plaintiffs assert the locks were changed on or about February 16, 2018.

3

8.      During March of 2018, Cathy Furlow requested and received access to the Subject Property from Defendant to collect Mrs. Macdonald's items that had remained in the house after her departure.

9.      On March 19, 2018, Plaintiffs filed a complaint against Defendant and Mrs. Macdonald in the Court of Common Pleas for the County of Charleston, South Carolina ("Partition Lawsuit"). The complaint included a cause of action for partition and a request for attorney's fees and costs for bringing the lawsuit.

10.     On April 11, 2018, Mrs. Macdonald executed a quit claim deed of her interest in the Subject Property to the Plaintiffs for consideration in the amount of $38,794.50. This quit claim deed was not recorded in the public records of Charleston County until October 23, 2018.

11.     On September 25, 2018, Plaintiffs filed an amended complaint in the Partition Lawsuit that added an unjust enrichment cause of action seeking reimbursement for Plaintiffs' payment of taxes and insurance for the Subject Property as well as seeking an award of rent against Defendant and their daughter, Mrs. Macdonald, for a purported ouster of Plaintiffs from the Subject Property. However, the amended complaint as well as statements of counsel for the Plaintiffs at the hearing on the Motion for Summary Judgment both indicate that Plaintiffs are only seeking an award of rent from February 2018, the time of Mrs. Macdonald's departure from the property and the changing of the locks, to the present. No claim of ouster is being made for the period since the purchase of the Subject Property.

12.     It appears on March 25, 2019, a second divorce proceeding was commenced by Defendant *pro se*. In that divorce complaint, Defendant asserts that Mrs. Macdonald "has a chronic alcohol abuse problem that has caused ongoing issues in the martial home and has now led to the breakdown of the parties' marriage." Defendant sought a divorce based on the grounds of Mrs.

4

Macdonald's habitual drunkenness. It does not appear that the Family Court finalized a divorce between Mrs. Macdonald and Defendant prior to Mrs. Macdonald's death in February 2020.

13.   On April 2, 2019, approximately one year after receipt of the quit claim deed, Plaintiffs dismissed without prejudice Mrs. Macdonald from the Partition Lawsuit.

14.   On December 12, 2019, Defendant filed a petition for relief under chapter 13 of the Bankruptcy Code (C/A No. 19-06512).

15.   On January 13, 2020, Plaintiffs filed a motion for relief from stay to continue their prosecution of the Partition Lawsuit in state court.

16.   On March 16, 2020, this Court entered a consent order in which the parties agreed to remove the Partition Lawsuit to this Court in order for the Court to determine the parties' respective ownership interests in the Subject Property as well as address the unjust enrichment cause of action as a prepetition claim asserted against Defendant.[5] Accordingly, on March 20, 2020, the Partition Lawsuit was removed to this Court as an adversary proceeding.

17.   On May 4, 2020, with the consent of the parties, the Court entered a scheduling order, which provided for the parties to complete discovery by May 30, 2020. The discovery included the deposition of Plaintiffs by Defendant to determine the facts on which Plaintiffs' relied for the unjust enrichment cause of action.

18.   On June 23, 2020, Defendant filed the Motion for Summary Judgment, which challenged the sufficiency of the facts necessary to support the claim of ouster and the award of rent sought by Plaintiffs' unjust enrichment cause of action.[6]

---

[5]   Plaintiffs have filed proofs of claim in Defendant's bankruptcy case alleging Defendant is liable for a total of $147,932.30 in rents due to an unjust possession. Defendant had also filed objections to Plaintiffs' proofs of claim, prior to the removal of the Partition Lawsuit to this Court.

[6]   The parties indicated in the May 4, 2020 Consent Scheduling Order that "motions for summary judgment[] are not needed and the parties are ready for trial." Despite this prior indication from the parties, Defendant filed the

19. On June 25, 2020, Plaintiffs filed the Memorandum in Opposition to Defendant's Motion.

20. The Court held a hearing on the Motion for Summary Judgment on July 8, 2020.

21. The record submitted by the parties for consideration with the Motion for Summary Judgment was limited. Plaintiffs submitted excerpts from the depositions of Plaintiffs Cathy and Michael Furlow. Plaintiffs initially attached an affidavit of Michael Furlow with their Memorandum in Opposition; however, at the hearing, after Defendant raised objections to the introduction of the affidavit, counsel for Plaintiffs indicated that Plaintiffs were not relying upon the affidavit to oppose the Motion for Summary Judgment.

22. The relevant portions of the deposition of Cathy Furlow that was presented to Court are:

- "Q. Have you ever demanded rent from [Defendant]? A. No."
- "Q. And have you ever requested access to the property after that date? A. One time. Q. Okay, when was that? A. Probably in March of '18. Q. And what was the purpose of the request? A. [Defendant] had boxed up all of [Mrs. Macdonald's] belongings, and they were in the garage, and I went with a mover to retrieve them. Q. And were you able to retrieve them? A. Yes."
- "Q. Besides that one instance, did you request access to the property from [Defendant] after he changed the locks? A. I don't believe so."
- "Q. Did you ever have keys to the property? A. Yes. I think so"
- "Q Did you or your husband ever go to the property without having discussed it with [Defendant] or [Mrs. Macdonald]? A. No."
- "Q. . . . [T]ell me how [Defendant] excluded you from the property? A. Well, he changed the locks and we weren't invited. Q. Anything else? A. No."
- "Q. In paragraph 25 it states that the Macdonalds have excluded the Furlows from use and enjoyment of the property by changing the locks to the house and demanding that the Furlows stay away from the property, the Macdonalds, and the Macdonalds' children. By changing the locks and claiming an exclusive right over the property and a denial of the Furlows' right, the Macdonalds have ousted the Furlows. Besides what's been stated in Paragraph 25, can you tell me any facts which you claim constitute an ouster? A. No. I don't – no."

---

present Motion for Summary Judgment. No party raised any issue or objection to the timing of the Motion for Summary Judgment. Therefore, the Court heard argument and considered its merits.

23. The relevant portions of the deposition of Michael Furlow that was presented to the Court are:

- "Q. Have you ever requested rent for the property from [Defendant]? A. No. I don't remember requesting anything from [Defendant]. I haven't spoken to him in a long time. Q. Did you ever request rent for the property from [Mrs. Macdonald]? A. No."
- "Q. What date do you contend that [Defendant] changed the locks, if you recall, approximately? A. February of '18."
- "Q. Did you ever request access to the property from [Defendant] after [the locks were changed]? A. Through my attorney."
- "Q. Have you attempted to physically go to the property since that date? A. No. I would be concerned for my physical welfare."
- "Q. Did you have keys [to the Subject Property] at any point? A. No."
- "Q. Can you tell me based on what facts you contend that the Macdonalds excluded you from the property? A. Yeah. They told us not to come around, primarily through [Mrs. Macdonald], and off and on they told us to stay away from the children. Q. Anything else? A. No."
- "Q. Can you tell me what facts you claim amount to an ouster, as is referenced in this paragraph, of the property? A. Changing of the locks and the forbidding of us to come around."

24. As part of the unjust enrichment cause of action, Plaintiffs seek an award of rent as they claim in their amended complaint that Defendant and Mrs. Macdonald ousted them from the Subject Property in February 2018 when the locks were changed and Mrs. Macdonald no longer resided at the property. Plaintiffs are not alleging that they were ousted from the Subject Property since its purchase in 2015.

**CONCLUSIONS OF LAW**

Defendant has moved for summary judgment on the portion of the unjust enrichment cause of action seeking an award of rent due to ouster because he alleges that the facts relied upon for this cause according to Plaintiffs' depositions, the changing of the locks and being told to "stay away", are insufficient to establish that cause of action under South Carolina law. Conversely, Plaintiffs allege that the depositions create a material issue of fact which precludes the entry of summary judgment. For purposes of the Motion, both parties appear to be relying solely on

7

Plaintiffs' depositions in support of their positions on the claim of ouster. Therefore, the Court is being asked to determine if the statements included in Plaintiffs' depositions, accepted as true, would be sufficient to establish an ouster to permit an award of rent to Plaintiffs under South Carolina law.

*Summary Judgment Standard*

"The [summary judgment] movant [who does not have the burden of proof at trial] can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him." 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2727.1 (4th ed. April 2020 update).

Federal Rule of Civil Procedure 56(a), which is made applicable to this proceeding by Fed. R. Bankr. P. 7056, provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." At the summary judgment phase, "[t]he pertinent inquiry is whether 'there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.*"* *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

Once the moving party makes a summary judgment motion, the burden is on the nonmoving party to demonstrate there is a genuine issue of material fact for trial. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings. *Id.* (quoting *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The evidence presented must be viewed in the light most favorable to the nonmoving

8

party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Supreme Court has explained that "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

*"Ouster" under South Carolina Law*

Under South Carolina law, "where one co-tenant has ousted the other co-tenant, and kept them out by force, he is liable as a trespasser for the rental value of the property beyond his ownership share." *Parker v. Shecut*, 562 S.E.2d 620, 623 (S.C. 2002). The Court of Appeals for South Carolina's decision in *Freeman v. Freeman* provides a summary of "ouster" under South Carolina law:

> "Ouster" is the actual turning out or keeping excluded a party entitled to possession of any real property. *Grant v. Grant,* 288 S.C. 86, 340 S.E.2d 791 (Ct.App.1986). The possession of one tenant in common is the possession of all and, for one tenant to establish title against a cotenant by adverse possession, he must overcome the strong presumption that he holds possession in recognition of the cotenancy. *Felder v. Fleming,* 278 S.C. 327, 295 S.E.2d 640 (1982); *Horne v. Cox,* 237 S.C. 41, 115 S.E.2d 513 (1960). Actual ouster of a tenant in common by a cotenant in possession occurs when the possession is attended with such circumstances as to evince a claim of exclusive right and title and a denial of the right of the other tenants to participate in the profits. *Woods v. Bivens,* 292 S.C. 76, 354 S.E.2d 909 (1987); *Brevard v. Fortune,* 221 S.C. 117, 69 S.E.2d 355 (1952). The acts relied upon to establish an ouster must be of an unequivocal nature, and so distinctly hostile to the rights of the other cotenants that the intention to disseize is clear and unmistakable. *Felder* [*v. Fleming*]*,* 278 S.C. [327] at 330, 295 S.E.2d [640] at 642 [(1982)]. Only in rare, extreme cases will the ouster by one cotenant of other cotenants be implied from exclusive possession and dealings with the property, such as collection of rents and improvement of the property. *Id.,* 278 S.C. at 331, 295 S.E.2d at 642.

473 S.E.2d 467, 470–71 (S.C. Ct. App. 1996). In the context of a co-tenant seeking rent for a purported ouster due to a changing of locks or a refusal to provide keys to the property, the parties

9

point to two leading cases under South Carolina case law—*Parker v. Shecut*, 562 S.E.2d 620 (S.C. 2002) and *Laughon v. O'Braitis*, 602 S.E. 2d 108 (S.C. Ct. App. 2004).

In *Parker*, a brother and sister inherited as tenants in common a beach house in Edisto Island. 562 S.E.2d at 621. The siblings maintained the beach house as rental in which they shared in the profits thereof. *Id.* at 621–22. Without consultation with the sister, the brother made the beach house his primary residence, ceasing its use as a rental. *Id.* at 622. The brother changed the locks and advised the sister that "she was not welcome to use the beach house." *Id.* Prior to the changing of the locks, the sister "had access to the beach house when it was not being rented." *Id.* The brother also testified that he would not give the sister a working key to the beach house unless ordered by the court to do so. *Id.* at 623. The Supreme Court of South Carolina held that the actions of the brother in *Parker* were sufficient to disseize the sister from the beach house and "clearly evince his claim of exclusive right and denial of [the sister's] right to use the property." *Id.* Therefore, the Supreme Court of South Carolina held that the sister was entitled to rent in the value proportionate to her ownership in the beach house as of the date the brother changed the locks. *Id.*

After *Parker*, the Court of Appeals in South Carolina addressed in *Laughon v. O'Braitis* another case in which a co-tenant requested rent based upon a purported ouster. In *Laughon*, two sisters, Catheryne and Charlotte, inherited their father's house when he passed away in 1997.[7] 602 S.E.2d at 109. Catheryne had lived in the house since 1983, assisting the father; whereas, Charlotte had only visited the house once since 1983 to attend his funeral. *Id.* After the father's funeral, Charlotte went into the house to collect her belongings; however, Charlotte testified that her

---

7    Catheryne and Charlotte also had two other siblings who also inherited a share in the house. *Laughon*, 602 S.E.2d at 109. Shortly after the father's death, the two other siblings deeded their interest to Catheryne, leaving her with a 75% interest in the house. *Id.*

10

brother was abusive to her during this walkthrough, and as a result, she called the sheriff's office.[8] *Id.* at 109. The officer who responded to the call ordered on his own volition that Charlotte leave the property and issued a trespassing warrant that provided that Charlotte would not be allowed on the property for six months. *Id.* at 109–10. A year later, Charlotte returned to collect belongings, and Catheryne allowed Charlotte access to the house to do so. *Id.* at 110. Charlotte also testified that she repeatedly requested a key to the house from Catheryne after their father's death, but Catheryne testified that she refused to provide her one on the grounds that her father's probate estate was still open and every time Charlotte visited the house, items in the house were damaged. *Id.* at 111 n.2. Charlotte brought a partition action and accounting of rents against Catheryne. *Id.* at 110. The master in equity found that Charlotte had not demonstrated ouster from the house and therefore, denied Charlotte's request for rent due to an ouster. *Id.* The Court of Appeals of South Carolina affirmed, finding the facts of *Laughon* differed significantly from *Parker*. *Id.* at 111. Specifically, the Court of Appeals noted that Catheryne allowed Charlotte access to the property every time she requested access and that Catheryne was not responsible for the sheriff officer's issuance of a trespass warrant against Charlotte (as Charlotte was the person who called the sheriff's office in the first place). *Id.*

*Application to the Present Matter*

As previously noted, while the parties had ample opportunity to present any and all facts necessary for the determination of this matter, both parties rely solely on excerpts of Cathy and Michael Furlow's depositions for the facts necessary to determine an ouster based on the changing of the locks and Plaintiffs being told to "stay away." As a result, the Court finds no dispute of

---

[8] At one point, while Charlotte and her husband (who was Jewish) were in the house, Charlotte's brother "goose-stepped" around the outside of the house with a pellet gun over his shoulder and a Nazi flag on his back. *Id.* at 110 n. 1.

11

material fact presented to it as the Court is being asked by all parties to rely on and accept as true the Furlows' deposition testimony. Therefore, all that remains for the Court to do is to determine if the facts presented in the Furlows' deposition testimony are sufficient to demonstrate an ouster, and therefore, an award of rent to the Furlows.

After review, the Court finds the present matter is more similar to the facts of *Laughon* than the facts of *Parker* and the actions taken by Defendant were not so unequivocal in nature and distinctly hostile to the rights of Plaintiffs as co-tenants in the Subject Property to constitute an ouster.

First, the Court notes that the actual intent and arrangement between the Furlows, Defendant and Mrs. Macdonald upon the Subject Property's purchase were that Defendant and Mrs. Macdonald would live in the Subject Property as their primary personal residence. This appears similar to the assistance the Furlows provided for the purchase of Defendant and Mrs. Macdonald's residences when they lived in Florida and Virginia and indicates an expectation of exclusiveness of access and use by the Macdonalds. While there was a difference in testimony between Cathy and Michael Furlow as to whether they ever had keys to the Subject Property,[9] Cathy Furlow, in her deposition, indicated that neither she nor Michael Furlow went to the Subject Property without discussing it first with Defendant or Mrs. Macdonald. This testimony supports the fact that the Furlows understood that Defendant and Mrs. Macdonald were to have full and exclusive use of the Subject Property as their residence after it was purchased. This is significantly different than *Parker*, where the co-tenants equally shared access and rents from the beach house prior to one co-tenant unilaterally deciding to make the beach house his sole residence.

---

[9] Michael Furlow indicated he did not have keys to the Subject Property at any point; while Cathy Furlow indicated that she thought she had keys at one point in time.

12

Further, while Mrs. Macdonald left the property in February 2018, the same month that Plaintiffs assert the ouster occurred, it appears that her departure was the result of a requirement of the Department of Social Services and related marital discord, and not any action by Defendant to deny the rights of any co-tenant. Defendant's continued exclusive possession was thereafter recognized as part of the temporary consent order entered between Mrs. Macdonald and Defendant in the Family Court divorce proceedings. Specifically, the consent order provided Defendant had sole and exclusive use and possession of the Subject Property as well as custody of the couple's children who also lived there.

The undisputed facts also do not demonstrate that Defendant unequivocally or with hostility denied the Furlows access to the Subject Property. First, the Court notes that the deposition testimony indicated that it was primarily Mrs. Macdonald who advised Plaintiffs to "stay away from" the Subject Property.[10] Cathy Furlow indicated that after the locks had been changed at the Subject Property, she requested access once to retrieve Mrs. Macdonald's belongings from the property, which Defendant allowed without incident or dispute. Cathy Furlow did not request access to the property any time thereafter. Similarly, Michael Furlow indicated that he only once requested access to the property after the locks were changed "[t]hrough his attorney." No further elaboration was provided regarding this request, including whether the request was granted or denied, or whether he is simply referring to the filing of the Partition Lawsuit. Moreover, Michael Furlow indicated that he had not attempted to physically go over to the property after the locks were changed. Therefore, the present matter is more similar to *Laughon*, where despite tensions between the co-tenants, the residing co-tenant granted access to the other co-tenant upon

---

[10] Mrs. Macdonald has previously been released from the lawsuit and any ouster claim by the Plaintiffs in April 2019.

13

request, and distinguishable from *Parker*, where the residing co-tenant indicated he would only grant access to the other co-tenant if the court ordered him to do so.

Further, while Plaintiffs relied upon Michael Furlow's statement that "[he] would be concerned for [his] physical welfare" if he went to Subject Property, this testimony only reflects on his own personal apprehension and does not attribute it to any actions taken by Defendant or Mrs. Macdonald.[11] In determining whether an ouster occurs, the focus is on the conduct and actions of the party allegedly ousting the party to determine if those actions and conduct demonstrate an intention to disseize. *See Laughon*, 602 S.E.2d at 110 n.1 (finding ouster did not occur despite the non-residing co-tenant "feeling threatened"). Therefore, the Court finds Mr. Furlow's statement of apprehension alone is insufficient to rise to the level of hostility or exclusion needed to demonstrate an ouster of one co-tenant by another.

Finally, the Court is not convinced the alleged statements made by Mrs. Macdonald and Defendant regarding their desire for Plaintiffs to no longer see them and their children or to come over to the Subject Property reached the unequivocal and hostile level necessary to demonstrates a clear and unmistakable intent to oust the Furlows from their interest in the Subject Property, particularly considering the strong presumption that one co-tenant holds possession for all co-tenants. The Court notes that the Furlows' daughter, Mrs. Macdonald, with whom Plaintiffs appeared to later reconcile after she departed from the Subject Property, was the primary person to communicate these statements to the Furlows, and not Defendant. In that regard, the Court notes that Mrs. Macdonald was previously released by Plaintiffs from the lawsuit as a result of her sale

---

[11] An Affidavit of Michael Furlow was initially submitted with the Brief in opposition to the Motion for Summary Judgment that indicated that Defendant threatened Mr. Furlow with physical harm if he were to come to the Subject Property. However, when consideration of that affidavit was challenged by Defendant's counsel at hearing, Plaintiffs' counsel indicated that he was not relying upon it but would rely solely on the testimony of the Furlows' depositions, which did not indicate such a threat. The Court notes that Plaintiffs had the opportunity to present other evidence but elected not to do so.

of her co-tenancy interest to them. Further, the purported statements of ouster relied upon by the Furlows are vague and general. For example, Michael Furlow stated that he and his wife were "told us not to come around, . . . and off and on they told us to stay away from the children." Mr. Furlow also stated that the Macdonalds "forbid[] us to come around." Likewise, Cathy Furlow indicated that she felt excluded from the Subject Property because "we weren't invited." These statements appear to be more indicative of a general falling out between the family members and do not express a clear and unmistakable intent to oust Plaintiffs from their co-tenancy rights in the Subject Property, especially when considering the parties prior intention that the Subject Property be exclusively used as the personal and primary residence of Defendant and Mrs. Macdonald.

## CONCLUSION

By the Motion for Summary Judgment, Defendant challenged whether the Plaintiffs can demonstrate the existence of facts to sufficiently support a claim of ouster and resulting award of rent under South Carolina state law. Based upon the record, Plaintiffs have failed to satisfy their burden of demonstrating that such facts exist or that a genuine issue of material fact remains that would establish an exclusion of Plaintiffs from the Subject Property based on a clear and unmistakable intent of Defendant by acts so distinctly hostile to disseize Plaintiffs from the Subject Property. Therefore, the Court grants Defendant's Motion for Summary Judgment.

Defendant is entitled to summary judgment as to Plaintiffs' unjust enrichment only to the extent that Plaintiffs sought an award of rent based upon a purported ouster. All other causes of action, including Plaintiffs' unjust enrichment cause of action for their alleged payment of property taxes and insurance for the Subject Property, will be considered at trial.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
July 27, 2020

15