# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Brian James Macdonald,<br><br>　　　　　　　　　　　　　　Debtor.<br><br>Michael Furlow<br>Cathy Furlow,<br><br>　　　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Brian J. Macdonald,<br><br>　　　　　　　　　　　　　　Defendants. | C/A No. 19-06512-JW<br><br>Adv. Pro. No. 20-80027-JW<br><br>Chapter 13<br><br>**ORDER DENYING MOTION TO RECONSIDER** |

This matter comes before the Court upon the Motion to Reconsider the Court's Order entered on September 15, 2020 ("Motion") filed by Michael and Cathy Furlow ("Plaintiffs"). A response to the Motion was filed by Brian J. Macdonald ("Defendant") on October 8, 2020. Pursuant to Fed. R. Civ. P. 56, which is made applicable to this proceeding by Fed. R. Bankr. P. 7056, the Court makes the following findings and conclusions.[1]

*The September 15 Order*

This adversary proceeding addresses Plaintiffs' request for partition of property known as 5718 Captain Kidd Road in Hollywood, South Carolina ("Charleston Property") that is co-owned by Plaintiffs and Defendant. After Plaintiffs paid the purchase price of the Charleston Property, the deed conveying the Charleston Property listed Plaintiffs, Defendant and Leigh

---

[1] The Court has already made extensive findings of fact in the September 15, 2020 Order and adopts those findings for the purposes of this Order.

Macdonald, Defendant's spouse and Plaintiff's daughter,[2] as tenants-in common without specifying the amount of each party's interest in the property. The central dispute at trial was the determination of each party's interest in the Charleston Property. After holding the trial, which included the testimony of Plaintiffs and Defendant and the presentation into evidence of select documents, the Court entered the September 15, 2020 Order, holding that Plaintiffs had not overcome the presumption under South Carolina law that the co-tenants held equal shares of the Charleston Property and that the interests of Defendant and Mrs. Macdonald (collectively the "Macdonalds") were gifts. The Court also denied both parties' requests for an award of attorney's fees, finding that each party should be responsible for their own attorney's fees in this proceeding.

*Rule 59(e) Motion*

Plaintiffs filed their Motion pursuant to Fed. R. Civ. P. 59(e), which is made applicable to this proceeding by Fed. R. Bankr. P. 9023. Rule 59(e), as modified by Fed. R. Bankr. P. 9023, provides that a motion to alter or amend a judgment must be filed no later than 10 days after the entry of the judgment. This Court recently addressed Rule 59(e) motions to reconsider in *In re Boyd*, 618 B.R. 133 (Bankr. D.S.C. 2020):

> The Fourth Circuit has recognized only three grounds for granting a Rule 59(e) motion: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. American Nat'l. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* "[T]he rule permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary

---

[2] In February 2020, while this adversary proceeding was pending, Mrs. Macdonald died. Plaintiffs had previously dismissed Mrs. Macdonald from this proceeding without prejudice after she had quitclaimed her interest in the Charleston Property while she was in the care of Plaintiffs.

2

> appellate proceedings' " *Id.* (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). The granting of a Rule 59(e) motion is in the discretion of the Court and is reviewed "under the deferential abuse of discretion standard." *Robinson v. Wix Filtration Corp., LLC*, 599 F.3d 403 (4th Cir. 2010).

*Id.* at 161.

*Clear Error of Law or Manifest Injustice*

Plaintiffs do not assert an intervening change in controlling law or the discovery of new evidence that was not available at the time of the trial; therefore, it appears Plaintiffs are asserting that the September 15, 2020 Order contains a clear error of law or that the Order would result in a manifest injustice. Specifically, noting that a partition is an action in equity, Plaintiffs allege that the Court incorrectly found: (1) that Plaintiffs had not overcome the rebuttable presumption that each co-tenant holds an equal share in property when the deed is silent as to each party's ownership interest, (2) that Defendant's interest in the Charleston Property was a gift and (3) that Plaintiffs were not entitled to an award of attorney's fees.

"To establish manifest injustice, [the Movant] must show that it acted with diligence and that it stands to suffer injury that is 'direct, obvious, and observable,' rather than mere potential prejudice." *Hartford Cas. Ins. Co. v. Farley Assocs. Inc.*, C/A No. 0:13-547-CMC, 2014 WL 4219953, slip op. at *5 (D.S.C. Aug. 25, 2014) (citing *Ciralsky v. CIA*, 355 F.3d 661 (D.C. Cir.2001); *Register v. Cameron and Barkley Co.*, 481 F.Supp.2d 479, 480 (D.S.C. 2007)). "It is a high standard to obtain relief pursuant to a clear error of law or to prevent a manifest injustice under Rule 59(e)." *In re Coats-Califf*, C/A No. 19-04310-jw, slip op., 2020 WL 257315 at *5 (Bankr. D.S.C. Jan. 8, 2020). The Fourth Circuit has noted that "[a] prior decision does not qualify [as a clear error of law or prevention of manifest injustice] by being just maybe or probably wrong, it must ... strike us as wrong with the force of a five-week-old,

3

unrefrigerated dead fish." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (citations omitted).

*Presumption of Equal Share*

Plaintiffs assert that they presented ample evidence to rebut the presumption that in the absence of an express provision in the deed, co-tenants have an equal share in the interest of the property. Specifically, Plaintiffs note that they paid the entire purchase price of the Charleston Property and that they had testified they had the expectation that Defendant and Mrs. Macdonald were to pay one-half of the purchase price in order to receive an equal share in the Charleston Property.

As Plaintiffs indicate in their Motion, while an uneven contribution to the purchase price is one factor to consider in determining whether the presumption is rebutted, it is not conclusive and other factors may be considered. In reaching the holdings of the September 15, 2020 Order, the Court considered all of the evidence presented, including the Plaintiffs' contributions and the past arrangements between the parties. The Court adopts by reference and incorporates in this Order, all of its findings and conclusions in the September 15, 2020 Order. Without a complete repetition of the Court's findings and conclusions, below highlights a few of the findings and conclusions that convinced the Court in its determinations:

- The undisputed and clear intent of the parties that the Charleston Property was to be used exclusively as the residence of Mrs. Macdonald, Defendant and their children as their family home and Plaintiffs never expected to receive any benefit.
- The differences in the method and manner of the purchase of the Charleston Property from the prior home purchases, including the lack of any written agreement for the Charleston Property either before or after the purchase, and the Court's finding that an oral agreement conditioning Defendant's interest in the property upon a subsequent contribution of one-fourth of the purchase price was not established based upon the record, nor would one be enforceable under the statute of frauds.
- The circumstances of the parties at the time of the purchase, including the urgent concerns for Mrs. Macdonald's condition and the fact that Defendant and Mrs.

4

    Macdonald clearly did not have the means to contribute one-half of the purchase price or obtain a mortgage loan due to the fact that Mrs. Macdonald was suffering from significant substance abuse problems and Defendant had recently suffered a work-related injury.

- The primary reason of the purchase of the Charleston Property being Plaintiffs' desire to have Mrs. Macdonald live closer to them in order to assist Mrs. Macdonald with her substance abuse problems and the promise of Defendant and Mrs. Macdonald's "dream house."

- The testimony of Defendant that he did not reach any agreement with the Plaintiffs regarding the purchase of or any debt obligations regarding the purchase of the Charleston Property and that Plaintiffs insisted that he be included on the deed for the Charleston Property so that he may appreciate the property after he suggested he need not be included on the deed.

- The lack of any written communication for years after the execution of the deed to indicate an obligation of the Macdonalds to contribute to the purchase price or that their interest in the Charleston Property was conditioned upon a repayment to the Plaintiffs.

- Mrs. Furlow's testimony that she did not intend to ever benefit from the Charleston Property and that the house was purchased for the express use of the Macdonalds and their children.

- The fact that no action was taken or demand made by the Plaintiffs to assert or recover any payment of the purchase price until Mrs. Macdonald was removed from the property by the South Carolina Department of Social Services and divorce proceedings were commenced between Mrs. Macdonald and Defendant.

Weighing these facts after considering the record and the credibility of the testimony presented in these very sad circumstances, the Court found that Plaintiffs had not rebutted the presumption of equal co-tenant shares. While Plaintiffs may disagree with the outcome of this matter, the Court finds no clear error or manifest injustice in its determination, and Plaintiffs have failed to meet the high burden necessary for reconsideration of the Court's conclusions regarding the presumption of equal shares between the parties.

*Gift to Defendant and Mrs. Macdonald*

In addition to finding that the presumption had not been rebutted, the Court also found based on the record and circumstances surrounding the purchase of the Charleston Property that Defendant and Mrs. Macdonald's interest in the Charleston Property was a gift.

While mentioned only briefly in the closing by Plaintiffs at the trial, Plaintiffs now assert in the Motion that a resulting trust in favor of Plaintiffs arose as to Defendant's and Mrs. Macdonald's interest in the Charleston Property.[3]

South Carolina law provides that:

> [e]quity devised the theory of resulting trust to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in party, that for a different reason is titled in the name of another. The general rule is that when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. <u>The presumption, however, may not be in accord with the truth. It may be rebutted and the actual intention shown by parol evidence.</u>

*Hayne Fed. Credit Union v. Bailey*, 489 S.E.2d 472, 475 (S.C. 1997) (internal citations omitted) (emphasis added). However, this presumption does not arise when the property is titled in a spouse, child or other dependent of the purchasing party, and it is presumed a gift or advancement was intended in such a situation. *Id.* at 475–76. This presumption of a gift applies even when "'the child is an adult to whom the parent owes no duty of support.'" *Id.* at 476 (quoting 5 William F. Fratcher, *Scott on Trusts* § 442 at 183 (4th ed. 1989)). South Carolina appellate courts have not directly addressed whether a presumption of gift arises when a parent pays the purchase price and property is then jointly titled in the names of both

---

[3] The Court notes that neither Plaintiffs' complaint nor their amended complaint assert the formation of a resulting trust. The only mention of a resulting trust was a brief reference in the parties' joint pretrial order under the section addressing *inter vivos* gifts. Generally, a court may consider a party's failure to raise arguments or issues at the hearing as a waiver or abandonment of those positions. *See, e.g., TD Bank, N.A. v. Burkhalter*, 2013 WL 653234 at *4 (W.D.N.C. Feb. 21, 2013) (suggesting a bankruptcy court may have deemed certain arguments raised in an objection to confirmation to be abandoned after the objecting party failed to make those specific arguments at the confirmation hearing); *Edmondson v. Arrowood (In re Edmondson)*, C/A No. 02-03848-W, Adv. Pro. No. 02-80193-W, 2002 WL 32389899 (Bankr. D.S.C. Sept. 26, 2002) ("[The] ground raised in Memorandum in Support dated September 17, 2002 by Defendant's counsel were either not applicable or abandoned by [Defendant] as they were not argued at the hearing [held on September 25, 2002]."); *In re Altman*, 265 B.R. 652, 657 (Bankr. D. Conn. 2001) ("[A] party who raises an issue but fails to address it in subsequent papers or at oral argument may be deemed to have abandoned that issue."); *In re Hartigan*, 2014 WL 702391 (Bankr. S.D. Fla. Feb. 24, 2014) ("Arguments that a party fails to timely raise, or raises but then fails to press responsibly throughout litigation, are waived.").

the child and the child's spouse. While, in *Jocoy v. Jocoy*, 562 S.E.2d 674, 676 (S.C. Ct. App. 2002), the Court of Appeals of South Carolina indicated that there is no presumption of a gift when the parent purchases property that is titled <u>solely</u> in the name of a son-in-law or daughter-in-law, courts in other jurisdictions have recognized a presumption of gift where property was jointly titled in the name of both the child and the child's spouse. *See In re Estate of McCormick*, 634 N.E.2d 341, 346 (Ill. App. 1994)(finding the presumption of gift to a child extended to the child's spouse when the property was transferred to the child and the child's spouse as a joint tenancy); *D'Uva v. D'Uva*, 74 So. 2d 889 (Fla. 1954) (finding the presumption of gift arose when father purchased real property for son and daughter-in-law); *Grichuhin v. Grichuhin*, 272 P.2d 141 (Wash. 1954) (suggesting a presumption of gift may apply in a dispute between parents and ex-daughter-in-law when parents had contributed to the purchase of property that was deeded in the name of their son and daughter-in-law); *Durward v. Nelson*, 481 N.W.2d 586 (N.D. 1992) (applying the gift presumption when parents purchased property that was titled in the name of their son and daughter-in-law). At least one jurisdiction has suggested a "weak" presumption of gift applies when property paid by a parent is titled in the name of a child and the child's spouse. *See Cohen v. Raymond*, 128 A.3d 1072, 1073–74 (N.H. 2015) (noting that no gift presumption apples to transfers solely to in-laws but noting that "a 'weak' gift presumption may apply to transfers from parents to their children and in-laws jointly").

In the present matter, while this Court believes that the South Carolina courts would view this situation as this Court has, it is not necessary for this Court to address this undetermined question of South Carolina law. The Court has found based upon the evidence

7

presented that, independent of any presumption, a gift was intended to Mrs. Macdonald and Defendant as a couple in the Charleston Property for the benefit of their family.

Ultimately, for issues involving a purported resulting trust, the actual intention of the parties at the time of the purchase is the critical determination. As the Supreme Court of South Carolina notes, "[o]therwise every gift made by paying for land and having the title made in the name of the donee would result in a trust in favor of the donor, contrary to his actual intention at the time." *Larisey v. Larisey*, 77 S.E. 129, 130 (S.C. 1913). Further, a resulting trust "cannot arise from subsequent transactions, change of circumstances or intention. It arises at the time of making the purchase, or not at all" but only at the time of the purchase or conveyance. *Id.*

Similarly, the determination of whether a purchase of property was a gift centers on the intention of the parties at the time of the conveyance. Specifically, to demonstrate an *inter vivos* gift under South Carolina law, three elements must be established: "(1) a donative intent to transfer the property; (2) delivery by the donor; and (3) acceptance by the donee." *Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2014 WL 234216, at *8 (D.S.C. Jan. 22, 2014) (citing *Worrell v. Lathan,* 478 S.E.2d 287, 288 (S.C. Ct. App.1996)).

In circumstances like the present matter, where there is no written document evidencing the parties' intent, a court must generally rely on the testimony of the parties, the circumstances at the time of the transaction and the conduct of the parties after the transaction to determine the parties' intent.[4]

---

[4] *See* 38 Am. Jur. 2d *Gifts* § 16 (August 2020 Update) (donative "[i]ntent may be demonstrated or inferred from the surrounding facts and circumstances, including the form of the transfer[,] the relationship of the parties[,] whether the plaintiff failed to request compensation or the services performed where the sort one would expect to receive as a mere gratuity[,] . . . the conduct of the parties[, and] subsequent acts [of the parties]"); 76 Am. Jur. 2d *Trusts* § 140 (August 2020 Update) ("To prove intent in the absence of any contemporaneous documentation in an action seeking to impose a resulting trust, a party generally may offer two types of evidence: first the parties themselves may testify about, or provide other extrinsic evidence of, their intent at the time of

In determining the parties' intent, the Court has weighed all of the evidence presented to it to make its determination.

The undisputed facts showed that the parties intended for the Macdonalds to have exclusive use and enjoyment of the Charleston Property as the family dream home for them and their children and that the property was, in fact, used exclusively for that purpose. Plaintiffs' intent to gift can also be inferred by their interest to benefit not only Mrs. Macdonald but her entire family, as evidenced by their promise to pay the children's lifetime education expenses and Defendant's testimony that Plaintiffs advised the Macdonalds not to worry about his retirement because Plaintiffs would ensure the Macdonalds were financially secure in the future. While it is undecided by South Carolina courts if this transaction should be presumed a gift, weight should be given to the relationship of the parties as parent, child and child's family, which lends support that the purchase was a gift of one-half interest in the Charleston Property to the Macdonalds.[5]

The circumstances surrounding the transaction also supported a finding of a gift. While Plaintiffs asserted at trial and reassert in their Motion that the parties intended to continue the requirements of past agreements, in which Mr. Furlow and the Macdonalds each contributed one-half of the purchase price for a one-half interest in the purchase property, the Court found the circumstances surrounding the purchase of the Charleston Property were significantly different than the prior purchases. First, the financial condition of the Macdonalds was dramatically different at the time of the purchase of the Charleston Property. For the prior

---

the transaction; and second, the parties' conduct after the transaction, in some cases, may shed light on the parties' contemporaneous understanding of the original agreement.").

[5] The Court notes that regardless of any presumption, the familial relationship of the parties increased the likelihood that the purchase was a gift as compared to a transaction between non-familial parties.

9

purchase of the property in Miami, Mrs. Macdonald and Defendant were both employed, and for the prior property purchase in Virginia, Defendant had recently gained employment with a salary that permitted Mrs. Macdonald to not work. However, when the Charleston Property was purchased, Mrs. Macdonald had not been employed in several years and Defendant had suffered a work-related injury, resulting in the Macdonald's family income being comprised of only Defendant's disability retirement income. Defendant testified, which the Court found credible, that the family's income was approximately $30,000 per year and that they could not have reasonably afforded a mortgage or be expected to pay one-half of the purchase price for the Charleston Property. Also, Mrs. Furlow testified that she did not ever expect to receive a benefit from the Charleston Property, and Plaintiffs have a long history of generous giving to Mrs. Macdonald and her family, including paying the education expenses for the Macdonald's children and setting up trusts for Mrs. Macdonald's benefit.

Defendant also testified without dispute that Plaintiffs insisted he be included on the Charleston Property deed to appreciate the ownership of the property after Defendant suggested that he need not be included.

Focusing on the circumstances existing at the time of the purchase of the Charleston Property, the Court notes that the motivation of this purchase was different from past purchases. Specifically, Defendant and Mrs. Macdonald's move to South Carolina was at the insistence of Plaintiffs in an effort to be closer to them and to assist with Mrs. Macdonald's continuing substance abuse problems, enticing the Macdonalds to move through the promise of the purchase of their "dream house."[6] The circumstances suggest the urgency of the

---

[6] Testimony was received that the purchase of the property in Miami was purchased so that the Macdonalds' children could attend school in a more reputable school district and the purchase of the property in Virginia was the result of Defendant's new job, which permitted Mrs. Macdonald to not have to work.

10

situation. Defendant, who served as a federal contractor in the Virginia area, testified that by moving, his opportunities of employment were significantly reduced and neither Mrs. Macdonald nor Defendant had employment at the time of the move to Charleston.

In addition, while written agreements were executed by the parties for prior purchases to define the parties' interest in the properties, no written agreement was executed for the Charleston Property, either before or after the purchase, and the Court did not find, based upon the evidence, that an oral agreement was reached between Plaintiffs and Defendant. Further, no action was taken to assert that the Macdonalds did not own one-half of the Charleston Property until several years after the purchase when the present adversary proceeding was filed and after Mrs. Macdonald was removed from the Charleston Property by Social Services due to her substance abuse problems and she had separated from Defendant.

Finally, while Plaintiffs assert that Mrs. Macdonald's quitclaim deed demonstrates that the Mrs. Macdonald's interest in the Charleston Property was not a gift but part of an agreement that her interest was conditioned on her contribution to the purchase price of the property,[7] the Court, in the September 15, 2020 Order, gave little weight to the quitclaim deed as evidence of the parties' intentions when the Charleston Property was purchased. The Court notes that the execution and filing of the quitclaim deed occurred after Plaintiffs had retained counsel and while Mrs. Macdonald was in the care of and dependent upon Plaintiffs due to her removal from the Charleston Property by Social Services and her separation from Defendant. Additionally, Mrs. Macdonald herself provided a contrary position by filing an

---

[7] Plaintiffs note that the consideration listed in the quitclaim deed equaled one-half of the proceeds paid to Plaintiffs from the sale of the property in Virginia. However, based upon the testimony of Plaintiffs, it does not appear the consideration was actually paid at the time the quitclaim was executed but only upon the recording of the quitclaim deed when Mrs. Macdonald was in need of the funds. After considering all of the evidence, the Court infers that due to Mrs. Macdonald's condition during the time she lived with Plaintiffs, they paid other amounts for her care and support, calling into question Plaintiffs' testimony.

amended answer in this action on July 25, 2018, after the execution of the quitclaim deed, which denied that "Plaintiffs own approximately ninety-five percent (95%) of the [Charleston] Property."

After considering the past history of the parties, their relationship, the circumstances and actions of the parties at the time of and after the purchase of the Charleston Property, and weighing the evidence and credibility of the testimony presented, the Court found that the parties' intent at the time of purchase was to gift a one-half interest in the Charleston Property to the Macdonalds.[8] The record was sufficient to support the Court's findings of a gift. Therefore, the Court finds that Plaintiffs have not satisfied the high burden of a clear error of law or manifest injustice to warrant an amendment of the September 15, 2020 Order.

*Award of Attorney's Fees*

Finally, Plaintiffs request the Court reconsider its determination to not award attorney's fees to either party in this matter, asserting that they are entitled to an award of attorney's fees. South Carolina law, which is applicable to this adversary proceeding, provides courts with wide discretion to award attorney's fees in partition actions, including declining to award attorney's fees to the parties. *See S & W Corp. of Inman v. Wells*, 321 S.E.2d 183, 185 (S.C. Ct. App. 1984) ("[T]he fixing and assessing of attorney's fees is a matter within the circuit court's discretion, the exercise of which will not be disturbed absent a showing of abuse thereof."). The Court finds no reason to deviate from its prior decision and declines to reconsider its determination that each party should be responsible for its own attorney's fees.

---

[8] The Court also notes that the required elements of delivery and acceptance for a gift were also demonstrated in the record, including the deed conveying the Charleston Property to the parties and the Macdonalds' exclusive use and possession of the Charleston Property.

Therefore, the Court denies Plaintiffs' motion to reconsider as to the Court's denial of Plaintiffs' request for attorney's fees.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' Motion to Reconsider the September 15, 2020 Order.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
October 15, 2020

**FILED BY THE COURT**
**10/15/2020**



*/s/ John E. Waites*
US Bankruptcy Judge
District of South Carolina

Entered: 10/15/2020